THOMAS D. DILLARD, JR., ESQ.
Nevada Bar No. 006270
STEPHANIE A. BARKER, ESQ.
Nevada Bar No. 003176
OLSON CANNON GORMLEY
& STOBERSKI
9950 West Cheyenne Avenue
Las Vegas, NV 89129
Phone: 702-384-4012
Fax:    702-383-0701
tdillard@ocgas.com
Attorney for Defendants
Clark County, Lynn Marie Goya
and Steve Wolfson (in their official
capacities)

Law Offices of
OLSON CANNON GORMLEY & STOBERSKI
A Professional Corporation
9950 West Cheyenne Avenue
Las Vegas, Nevada 89129
(702) 384-4012, Telecopier (702) 383-0701

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

\* \* \* \*

| | |
|---|---|
| UNIVERSAL LIFE CHURCH MONASTERY a/k/a UNIVERSAL LIFE CHURCH, | ) )<br>) ) CASE NO.  2:18-cv-02099-RFB-BNW |
| Plaintiff, | ) ) |
| vs. | ) ) |
| CLARK COUNTY, NEVADA; LYNN MARIE GOYA (in her official capacity as Clark County Clerk); STEVE WOLFSON (in his official capacity as the Clark County District Attorney); JANE DOE; JOHN ROE; and JANE POE, | ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) ) |

## MOTION TO STRIKE PLAINTIFF'S EXPERT WITNESS AND REPORT

COME NOW, Defendants CLARK COUNTY, LYNN MARIE GOYA ("Clerk Goya")

and STEVE WOLFSON (in their official capacities) (hereinafter "Clark County Defendants"), by

and through their counsel of record, THOMAS D. DILLARD, JR., ESQ. of the law firm of

OLSON CANNON GORMLEY & STOBERSKI, and hereby move to strike Plaintiff's expert

and preclude Plaintiff from using his report or offering testimony from him in this case.

This Motion is made and based upon all the pleadings and papers on file herein, the

attached points and authorities, together with any argument that may be introduced at the time of

hearing this matter before this Honorable Court.

## DECLARATION OF THOMAS D. DILLARD, JR., ESQ
## IN SUPPORT OF MOTION TO STRIKE PLAINTIFF'S EXPERT REPORT

1.      I am a partner with the law firm of Olson Cannon Gormley & Stoberski and counsel for the Clark County Defendants in the above entitled caption. I make this declaration in support of Defendants's Motion to Strike Plaintiff's Expert Disclosure. The facts stated herein are based on my personal knowledge.

2.      This request is made in good faith and without dilatory motive.

3.      On June 23, 2020, in accordance with EDCR 2.47, opposing counsel and I held a telephone meet and confer regarding the admissibility of Plaintiff's expert including his methodology and conclusions.

4.      During the meet and confer, I explained that the expert did not meet the admissibility standards for expert testimony and used methodology and came to opinions that was inconsistent with controlling Ninth Circuit case law.

5.      Counsel for Plaintiff requested case law citations regarding those positions and I provided three citations included herein.

6.      I indicated to Plaintiff's counsel on June 24, 2020 in an e-mail that I would move forward to file the motion; however, I was amenable to giving Plaintiff more time to oppose the motion to consider the foregoing points and authorities for the purpose of withdrawing the expert.

7.      The parties have accordingly not resolved and this Motion therefore follows.

I declare under penalty of perjury under the laws of the State of Nevada that the foregoing is true and correct.

DATED this 23 day of June, 2020

_____
THOMAS D. DILLARD, JR., ESQ.

Law Offices of
OLSON CANNON GORMLEY & STOBERSKI
A Professional Corporation
9950 West Cheyenne Avenue
Las Vegas, Nevada 89129
(702) 384-4012   Telecopier (702) 383-0701

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

This instant case involves a constitutional challenge to action taken by the Clark County Clerk of Nevada to make Plaintiff comply with the marriage officiant requirements under Nevada State law pursuant to NRS 122.062 beginning in May of 2016 through 2017. During the years of 2016-2017, prior to the passage of an enabling statute permitting the Clark County Clerk to modify the procedure in 2018, the marriage officiant strictures of NRS 122.062 applied to all marriages performed in Clark County. Clark County did not deem that Plaintiff provided the necessary documents showing that it was a church or religious organization incorporated, organized or established in the state of Nevada as required by NRS Chapter 122 to be placed on a list of religious organizations approved to issue Affidavits of Authority to Solemnize Marriages ("AASM"). Plaintiff alleges the Clark County Defendants violated its free exercise, due process and equal protection rights.

Plaintiff alleges the failure to include ULC on the list of approved religious organizations established in the State of Nevada in 2016-2017 substantially burdened the practice of Plaintiff's religion. [#1 at pg. 12]. Plaintiff does not identify any interference on Plaintiff's religious tenets or practices beyond recognizing ULC ministers as those that belong to a religious organization established in the State of Nevada to act as marriage officiants.

The discovery phase of this case is now closed and both sides have moved for summary judgment. As set forth in Clark County's summary judgment briefing, there is a single question of law that is dispositive on Plaintiff's claims and hence the merits of both parties' motions for summary judgment. The question is whether there exists a First Amendment right pursuant to the Free Exercise Clause to legally "join together as husband and wife persons who present a marriage license obtained from any county clerk of the State." NRS 122.062(1). If the alleged prohibition does not interfere with protected First Amendment conduct (irrespective of Plaintiff's alleged associational standing to assert this claim for any unidentified individual) Clark County has not deprived Plaintiff of any federal right to state a 42 U.S.C. § 1983 claim. As it stands as argued in Clark County's motion [#40 pp. 10-12], there is controlling law from the Ninth Circuit

OLSON CANNON GORMLEY & STOBERSKI
A Professional Corporation
9950 West Cheyenne Avenue
Las Vegas, Nevada 89129
(702) 384-4012   Telecopier (702) 383-0701
Law Offices of

establishing that Plaintiff's ministers do not hold a First Amendment free exercise right to

perform marriages. Plaintiff has not cited any legal authority standing for the proposition that a

member of Plaintiff's religious organization holds a free exercise right to perform secular

marriage ceremonies and have authority to submit the documents to have that union recognized

under state law. Rather, Plaintiff has solely relied upon the opinion of an attorney purportedly

offering a legal opinion that Plaintiff's members sincerely hold this religious right. Plaintiff, on

June 27, 2019, disclosed the expert report of Robert J. B. Flummerfelt, Esq. (Flummerfelt

Report, attached as Exhibit "A"). Mr. Flummerfelt addressed the legal issues whether Plaintiff is

a Church and whether there is a right protected by the Free Exercise Clause of the First

Amendment to be recognized as a marriage officiant so that a person can perform a marriage

ceremony and administratively serve to solemnize the marriage.

Plaintiff's claims and its own motion for summary judgment rests on the foundational

allegation that "many ULCM ministers were unable to practice their religion" by performing

marriages, but Plaintiff largely ignores the issue of whether Plaintiff or any unnamed minister

holds a religious right to perform marriages other than relying upon the *ipse dixit* of this expert.

Plaintiff and Plaintiff's expert also ignores the testimony of George Freeman, the founder

and President of Universal Life Church Monastery Storehouse. Mr. Freeman made clear that

Plaintiff has no doctrinal position with respect to marriage or officiating in civil marriages at all.

He in fact states that the only religious tenets it has is that "a person should always strive to do

what is right" and "all people are naturally endowed with the rights to practice their beliefs."

[Freeman Aff. at ¶ 4, #41-2 pg. 3]. Plaintiff likewise imposes no requirements on anyone that

feels called to any particular ministry that he or she elects to do and that Plaintiff's "ministers

choose to perform marriages, **if they feel called to do so**." Id. at ¶¶ 8-9 (emphasis added).

Plaintiff's President testified that the "great thing about Universal Life Church Monastery

Storehouse is that you get to keep your own religion, your own God" and that Plaintiff "only

demand[s] that you do the right thing and don't hurt anybody and respect the other person's right

. . ." (George Freeman Depo. pp. 39-40, attached as Exhibit "B").

The Clark County Defendants now move to strike the report of Mr. Flummerfelt because

Law Offices of
OLSON CANNON GORMLEY & STOBERSKI
A Professional Corporation
9950 West Cheyenne Avenue
Las Vegas, Nevada 89129
(702) 384-4012   Telecopier (702) 383-0701

Law Offices of
OLSON CANNON GORMLEY & STOBERSKI
A Professional Corporation
9950 West Cheyenne Avenue
Las Vegas, Nevada 89129
(702) 384-4012   Telecopier (702) 383-0701

it is not admissible Rule 702 evidence. Plaintiff's expert has done nothing more than provide ultimate conclusions issues of law. This is not the province of an expert witness. The Court is the final arbiter of the law and, if need be, will provide jury instructions to the trier of fact on the parameters of First Amendment law. The report is not based upon any verifiable specialized knowledge outside of determinations by the judiciary within the context of a specific case and is not helpful to the trier of fact in deciding any potential issue of fact in this case. The Court should therefore strike the report from Plaintiff's motion for summary judgment [Doc. 41-4 pp. 2-7] and preclude Plaintiff from offering Mr. Flummerfelt's inadmissible opinions in this case.

## II.   SUMMARY OF EXPERT REPORT PROVIDING FIRST AMENDMENT CONCLUSIONS OF LAW

Mr. Flummerfelt first came to the legal conclusion that Plaintiff Universal Life Church Monastery is a religion for purposes of First Amendment analysis. (Exhibit "A") pg. 5). He did not refer to any legal standards or set forth any recognized methodology to reach this conclusion. The narrative for his opinion consisted of a historical review of Protestantism in general beginning in the 15th century and deciding that Plaintiff's formation "aris[es] from the Protestant Christian Tradition. Id. at 2. Mr. Flummerfelt identified attributes of Protestant faiths and concluded without specificity that Plaintiff somehow shares in those attributes, although at "low" –if not at an objectively unidentifiable or indescribably--level.

The first attribute he references is doctrine or dogma. He notes that many traditional churches have a "high level of theological doctrinal uniformity" and Plaintiff is somehow similar because it clearly embraces a "low" doctrinal level.  He states that Plaintiff's low-level doctrine involves "an ecumenical mindset that is **all inclusive** and open to different expressions of faith." Id. at 3 (emphasis added). This is the only description of Plaintiff's doctrine that Mr. Flummerfelt could ascertain from his review of Plaintiff's website and various documents in this case. Id. In other words, the doctrinal approach is anything goes.

The second category Mr. Flummerfelt notes is that of hierarchical structure. He summarily concludes that Plaintiff lies again on the low end of the spectrum in this area as well. He states Plaintiff is "very decentralized, non-hierarchical, non-norm based faith for the purpose

of structure, governance and order." Id. The report, however, does not describe Plaintiff having any particular centralized order or hierarchy structure whatsoever. Mr. Flummerfelt's opinion that Plaintiff is still at the low-end (when he found nothing hierarchical to describe at all) thus has no support other than his naked assertion.

The last category of a religion he posits is liturgical worship. Id. at 3-4. Mr. Flummerfelt describes some religions that he describes as being "highly ritualized" or those that involve "high Church" type of worship. Id. at 4. Plaintiff is once again "at the other end" of the spectrum because there "is no specific form of worship." The question that immediately suggests itself is: if Plaintiff ascribes to no form of worship, how is it on the liturgical spectrum at all? Plaintiff's expert does not answer the question, but only implies Plaintiff is just on the low liturgical level.

Mr. Flummerfelt does note that Plaintiff "teaches in the equality of all humankind" and that persons should "do only that which is right." Id. at 4. He states the scope of Plaintiff's teaching leaves the question of "what is right?" exclusively to personal predilections and philosophy beyond "imping[ing] upon the rights or freedoms of others and is in accordance with the government's law." Id. at 4. Mr. Flummerfelt states that this is an "ethos" and it, in his unspecified view, shares Christian and First Amendment values. Id.

The second conclusory legal opinion is that the performance of weddings and baptisms and presiding over funerals "is an integral part of [Plaintiff's] practice of the tenets of its religion." Put differently, Plaintiff proffers this report to state that Plaintiff holds a First Amendment free exercise right to perform marriages. Mr. Flummerfelt did not communicate with any person claiming to be a member or a minister of Plaintiff. He seemingly admits that Plaintiff does not have any marriage performance policies at all regarding marriage or performances of marriage beyond the personal guide to do what one thinks is right. While not pertinent to the Plaintiff's allegations regarding burdening the performance of marriage, Mr. Flummerfelt also does not indicate that Plaintiff has any policies, practices or customs regarding baptism or funeral services either. He merely indicates that a person that follows the on-line instructions for ordinations is given Plaintiff's authority to perform marriages. Id. at 5.

/ / /

III.    **LEGAL ARGUMENT**

A.    **Standards Governing Expert Testimony**

In <u>Daubert v. Merrell Dow Pharmaceutical, Inc.</u>, 509 U.S. 579, 113 S. Ct. 2786 (1995), the Supreme Court held that Federal Rule of Evidence 702 requires the trial court to ensure any scientific testimony offered under the Rule is "not only relevant, but reliable." <u>Id.</u> at 589; <u>United States v. Vallejo</u>, 237 F.3d 1008, 1019 (9th Cir. 2001). In <u>Kumho Tire Company, Co., Ltd. v. Carmichael</u>, 526 U.S. 137, 119 S. Ct. 1167 (1999), the Supreme Court significantly clarified the scope of <u>Daubert</u>. The Court held that Rule 702 gate keeping duties of the trial judge applied to all expert testimony, whether said testimony is based on scientific, technical or other specialized knowledge. <u>Kumho</u> also made clear that the gate keeping function is a flexible and a common sense undertaking in which the trial judge is granted "broad latitude" in deciding how to determine reliability as well as the ultimate decision of whether the testimony is reliable. <u>Id.</u> at 141-42. In the expert witness context, reliability seeks to capture whether an expert's testimony has "a reliable basis in the knowledge and experience of the relevant discipline." <u>Kumho Tire Co.</u>, 526 U.S. at 149.

The purpose of the gate keeping function is to "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." <u>Id.</u> at 152. The rigorous requirements for admission are necessary because expert witnesses have the potential to "be both powerful and misleading." <u>Daubert</u>, 509 U.S. at 579; <u>see also</u> <u>United States v. Dorsey</u>, 45 F.3d 809, 815-16 (4th Cir. 1995)(holding expert testimony with the greater potential to mislead rather than to enlighten must be excluded). Accordingly, expert testimony in the federal courts must satisfy two criteria: it must consist of reliable scientific, technical or specialized knowledge and it must assist the trier of fact to understand or determine a fact in issue. <u>See</u> <u>Daubert</u>, 509 U.S. at 592.[1]

---

[1] <u>Daubert</u> provid[es] a non-exclusive list of factors for determining whether expert testimony is sufficiently reliable to be admitted into evidence, including: (1) whether the scientific theory or technique can be (and has been) tested, (2) whether the theory or technique has been subjected to peer review and publication, (3) whether there is a known or potential error rate, and (4)

Law Offices of<br>OLSON CANNON GORMLEY & STOBERSKI<br>A Professional Corporation<br>9950 West Cheyenne Avenue<br>Las Vegas, Nevada 89129<br>(702) 384-4012   Telecopier (702) 383-0701

If the testimony is reliable, the <u>Kumho Tire</u> Court further reminded the trial courts that **"the gatekeeping inquiry must be tied to the facts of the particular case."** <u>Kumho Tire</u>, 526 U.S. at 150, 119 S.Ct. 1167 (*quoting* <u>Daubert</u>, 509 U.S. at 591, 113 S.Ct. 2786) (emphasis added). "Nothing in either <u>Daubert</u> or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. <u>Kumho</u>, 119 S. Ct. 1t 1179 (citing <u>General Electric Co. v. Joiner</u>, 522 U.S. 136, 118 S. Ct. 512, 519 (1997)); <u>see also</u> <u>Navarro v. Fuji Heavy Indus.</u>, 117 F.3d 1027, 1031 (7th Cir.), <u>cert</u>. <u>denied</u>, 118 S. Ct. 600 (1997)("a conclusion without any support is not one based on expert knowledge and entitled to the dignity of evidence"). Put differently, "[w]here the proffered expert offers nothing more than a 'bottom line' conclusion, he does not assist the trier of fact." <u>Clark v. Takata Corp.</u>, 192 F.3d 750, 759 (7th Cir. 1999). A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered. <u>Joiner</u>, 522 U.S. at 146, 118 S.Ct. 512.

The Court is concerned "not [with] the correctness of the expert's conclusions but the soundness of his methodology." <u>Primiano v. Cook</u>, 598 F.3d 558, 564 (9th Cir. 2010). However, "[w]hen an expert opinion is not supported by sufficient facts to validate it in the eyes of the law, or when indisputable record facts contradict or otherwise render the opinion unreasonable, it cannot support a jury's verdict." <u>Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.</u>, 509 U.S. 209, 242 (1993); <u>see also</u> <u>Guidroz-Brault v. Mo. Pac. R. Co.</u>, 254 F.3d 825, 830-31 (9th Cir. 2000) (excluding expert testimony that "was not sufficiently founded on the facts" of the case).

For example, a scientific study must have "a valid scientific connection to the pertinent inquiry as a precondition to admissibility." <u>Daubert</u>, 509 U.S. at 591–92, 113 S.Ct. 2786. Thus, the expert testimony must have sufficient "factual underpinnings" to be considered helpful to the trier of fact and admissible. <u>Walker v. Soo Line R.R. Co.</u>, 208 F.3d 581, 586 (7th Cir. 2000). Stated alternatively, if the proposed testimony does not logically advance a material aspect of the proposing party's case, then it will not be received. If an expert relies on faulty or speculative

whether the theory or technique is generally accepted in the relevant scientific community. <u>Daubert</u>, 509 U.S. at 593-94.

assumptions or information, the expert testimony is not sufficiently tied to the facts and is not admissible. See State v. Babich, 797 S.E.2d 359, 362-64 (N.C. 2017)(holding that an expert opinion not based on any actual facts does not satisfy the "fit" test because the expert's otherwise reliable analysis is not properly tied to the facts of the case). "[T]he touchstone of admissibility is whether the testimony will assist the trier of fact." Wehling v. Sandoz Pharmaceuticals Corp., 162 F.3d 1158, 1998 WL 546097, at *3 (4th Cir. 1998).

While it is not per se improper for an expert to testify concerning the ultimate issue in the case, "an expert witness cannot give an opinion as to her legal conclusion, i.e., an opinion on an ultimate issue of law." Mukhtar v. Cal. State Univ., Hayward, 299 F.3d 1053, 1066 n. 10 (9th Cir.2002). Experts also are not permitted to make legal conclusions as they are not experts in the law. See, e.g., Crow Tribe of Indians v. Racicot, 87 F.3d 1039, 1045 (9th Cir. 1996) ("Expert testimony is not proper for issues of law. Experts interpret and analyze factual evidence. They do not testify about the law."). Indeed, instructing the jury as to the applicable law "is the distinct and exclusive province" of the court. United States v. Weitzenhoff, 35 F.3d 1275, 1287 (9th Cir.1993)(admitting expert testimony on "contest issues of law" instead of instructing jury was "manifestly erroneous"). Further, an expert's ultimate opinion statement such as "there does not appear to be any dispute" about the existence of a partnership agreement is both factually unsupported and constitutes improper vouching. See Mata v. Oregon Health Auth., 739 Fed. Appx. 370, 372 (9th Cir. 2018) (holding that district court did not abuse its discretion by excluding expert testimony when expert's report "did little more than vouch for [plaintiff's version of events"); see also United States v. Duncan, 42 F.3d 97, 101 (2d Cir.1994) ("When an expert undertakes to tell the jury what result to reach, this does not aid the jury in making a decision, but rather attempts to substitute the expert's judgment for the jury's.").

Plaintiff's expert report is inadmissible because it is not reliable when it utilizes a methodology that conflicts with controlling law. It is not relevant because the expert's analysis fails to account for controlling legal standards about religions and religious rights. The expert also reaches bottom line conclusions that pertain to ultimate issues of law. The expert opinions are unhelpful to the trier of fact and invade the province of the court.

**B.**   **Plaintiff's Expert Witness Does Offer Relevant or Reliable Religious Opinions to Meet the Requirement of Rule 702.**

      **1.**   **The Legal Conclusion that Plaintiff is a Religion Is Inconsistent with First Amendment Law and thus Not Helpful to the Trier of Fact.**

Plaintiff has offered an expert report to draw the legal conclusion that it is a religion and Free Exercise rights attach to it. The historical methodology used by the expert and the conclusory opinions reached, however, do not align with controlling law and are inconsistent with the admissibility standards of Federal Rule of Evidence 702. Mr. Flummerfelt failed to consider controlling Ninth Circuit law when coming to the legal conclusion that Plaintiff must be considered a First Amendment protected religion

In Alvarado v. City of San Jose, 94 F.3d 1223 (9th Cir. 1996), the Ninth Circuit adopted the Third Circuit's clear definition of "religion" for purposes of the First Amendment. To assess whether a belief or movement invokes constitutionally cognizable religious interests under the First Amendment, the Ninth Circuit has adopted the following three-part test:

> First, a religion addresses fundamental and ultimate questions having to do with deep and imponderable matters. Second, a religion is comprehensive in nature; it consists of a belief-system as opposed to an isolated teaching. Third, a religion often can be recognized by the presence of certain formal and external signs.

Alvarado v. City of San Jose, 94 F.3d 1223, 1229-30 (9th Cir.1996) (quoting Africa v. Pennsylvania, 662 F.2d 1025, 1032 (3d Cir.1981), cert. denied, 456 U.S. 908, 102 S.Ct. 1756 (1982)); see also Malnak v. Yogi, 592 F.2d 197 (3d Cir. 1979)(Adams, J., concurring). Under the third prong considering whether there are  formal and external signs of religion, this factor involves evaluation of whether the organization includes: "formal services, ceremonial functions, the existence of clergy, structure and organization, efforts at propagation, observance of holidays and other similar manifestations associated with the traditional religions." Alvarado, 94 F.3d at 1229 (quoting Africa, 662 F.2d at 1035-36).

In Alvarado, the Ninth Circuit considered whether the New Age movement was a religion in order to determine if a challenged statue was "religious" for Establishment Clause purposes. 94 F.3d at 1227. The city of San Jose had commissioned a sculpture depicting Quetzalcoatl, the "Plumed Serpent" of Aztec mythology. Id. at 1225. The plaintiffs brought an action, alleging that

the city violated the First Amendment's Establishment Clause by setting up a "religious" object. Id. The court found that the sculpture was not "religious" under the Establishment Clause even though there was evidence indicating some believed Quetzalcoatl was "an incarnation of Christ." Id. at 1230. The court found, however, this belief to be a subjective one that was held by a few, but not rooted in any "text, creed or organized group." Id.

Although Alvarado was an Establishment Clause case, the court approvingly applied the Third Circuit's Free Exercise test from Africa v. Pennsylvania, 662 F.2d 1025 (3d Cir. 1981), to determine if worship of Quetzalcoatl was a "religion." Alvarado, 94 F.3d at 1229.[2]  The Ninth Circuit in Alvarado thus adopted the Africa court test, which has also become the standard in other federal circuits. See, e.g., Friedman v. S. Cal. Permanente Med. Group, 102 Cal. App. 4th 39, 60 (Ct. App. 2002) (discussing the influence of the Africa test under both religion clauses and collecting cases from federal circuit and district courts).

When deciding that the movement was not a religion, the Ninth Circuit applied the aforementioned three-part test to determine whether the publicly-funded sculpture was "religious," or secular in nature. The court specifically considered whether the "New Age" Movement: (1) had current religious adherents or significance; (2) addressed fundamental and ultimate questions having to do with deep and imponderable matters; (3) was comprehensive in nature, consisting of a belief-system and not an isolated teaching; and (4) had certain formal and external signs. 94 F.3d at 1227-30.

The Ninth Circuit found the movement at issue in Alvarado to be philosophical in nature and not religious due to its universalist approach to doctrine and informal structure. The court stated:

> The picture of the New Age that emerges is one of individual efforts to "find" or heal oneself, physically and spiritually, with the help of symbols drawn from an infinite store of texts, visual sources and "beliefs drawn from every religious

---

[2] In Africa, a prisoner claimed that it would violate the tenets of his religious group--a "revolutionary" organization that was "absolutely opposed to all that is wrong"--to eat anything other than raw foods. 662 F.2d at 1026. After evaluating the prisoner's Free Exercise claim against the aforementioned indicia, the Third Circuit court found that the prisoner's dietary requirement was not a "religious belief" warranting First Amendment protection. Id. at 1032.

Law Offices of
OLSON CANNON GORMLEY & STOBERSKI
A Professional Corporation
9950 West Cheyenne Avenue
Las Vegas, Nevada 89129
(702) 384-4012   Telecopier (702) 383-0701

tradition." . . . The New Age proponents cited by plaintiffs clearly indicate that there is no New Age organization, church-like or otherwise; no membership; no moral or behavioral obligations; no comprehensive creed; no particular text, rituals, or guidelines; no particular object or objects of worship; no requirement or suggestion that anyone give up the religious beliefs he or she already holds. In other words, anyone's in and "anything goes.". . .

Few governmental activities could escape censure under a constitutional definition of "religion" which includes any symbol or belief to which an individual ascribes "serious or almost-serious" spiritual significance. "[I]f anything can be religion, then anything the government does can be construed as favoring one religion over another, and ... the government is paralyzed...." . . . While the First Amendment must be held to protect unfamiliar and idiosyncratic as well as commonly recognized religions, it loses its sense and thus its ability to protect when carried to the extreme proposed by the plaintiffs. . . . .

There is no text, creed or organized group . . . . Under <u>Africa</u>, the New Age concepts presented by the plaintiffs, while they invoke "ultimate concerns," fail to demonstrate any shared or comprehensive doctrine or to display any of the structural characteristics or formal signs associated with traditional religions.

<u>Id.</u> at 1229-30 (internal citations omitted).

The expert report of Mr. Flummerfelt is devoid of any content suggesting that his methodology aligns with these controlling legal standards regarding the First Amendment. The specialized knowledge he claims to hold as a licensed attorney claims to have that would be helpful to the court is clearly based upon alleged legal expertise. Even assuming that he permissibly reaches ultimate legal conclusions in this case, which he does not, the methodology he employs to reach these conclusions of law is clearly inconsistent with the law. Moreover, the scant analysis further is not relevant to the case and his opinions amount to nothing more than blanket legal assertions (i.e. *ipse dixit*). The expert's failure to come to a relevant and reliable opinion that does not invade the province of the court and actually contradict how the trier of fact will be instructed is made clear when simply comparing the report to the aforementioned Ninth Circuit law.

First, Plaintiff's expert has failed to consider whether Plaintiff Universal Life Church Monastery Storehouse addresses fundamental and ultimate questions having to do with deep and imponderable matters to resemble a religion. See <u>Alvarado</u>, 94 F.3d at. 1229-30. In <u>Africa</u>, the Third Circuit elaborated on this factor, explaining as follows:

Traditional religions consider and attempt to come to terms with what could best be described as "ultimate" questions-questions having to do with, among other things, life and death, right and wrong, and good and evil. Not every tenet of an

Law Offices of
OLSON CANNON GORMLEY & STOBERSKI
A Professional Corporation
9950 West Cheyenne Avenue
Las Vegas, Nevada 89129
(702) 384-4012   Telecopier (702) 383-0701

established theology need focus upon such elemental matters, of course; still, it is difficult to conceive of a religion that does not address these larger concerns. For, above all else, religions are characterized by their adherence to and promotion of certain "underlying theories of man's nature or his place in the Universe."

662 F.2d at 1033.

Mr. Flummerfelt's report does not identify this factor as pertinent in his analysis at all. His finding that the low level doctrinal contribution of Plaintiff is at least on the spectrum to be compared to some other religions is not relevant at all. To be sure, the "do what you think to be right" exclusive mantra does not constitute a "system of belief and worship of a 'superhuman controlling power' involving a code of ethics and philosophy requiring obedience thereto." PLANS Inc. v. Sacramento County School Dist.,752 F.Supp.2d 1136, 1142-43 (E.D. Cal. 2010). This credo does not provide answers to "ultimate questions" about life and death or right and wrong or good and evil, as described in Africa. The suggestion encourages personal inquiry, but clearly does not provide answers to any ultimate questions. Plaintiff does not point anyone to a source of truth, only that people might discern the true knowledge for themselves through self-inquiry--without religious guidance from any recognized eternal truth. Any person can hence be a member of Plaintiff's organization regardless of his religious beliefs, and can explore his own ultimate questions and seek his own answers. Id. at 1144. Plaintiff's "low doctrinally orient[ation]" does not tread deeply on imponderable matters.

Second, Plaintiff's expert also did not determine or even examine whether Plaintiff promulgates a comprehensive belief-system as opposed to just an isolated teaching. See Alvarado, 94 F.3d at. 1229-30. Mr. Flummerfelt failed to recognize this as a relevant factor to consider because, if he did, he could come to no other answer other than Plaintiff falls well short of the comprehensiveness mark. Plaintiff's "Desiderata" (or something that is needed or is wanted) that Mr. Flummerfelt references on page 4 of his report is by definition an isolated proverb and not a comprehensive system of belief.

Third, Mr. Flummerfelt did not identify the presence in Plaintiff of any formal and external signs of worship to resemble a religion either. See Alvarado, 94 F.3d at. 1229-30. The "low" (or better said non-existent or amorphous) hierarchical and liturgical organization strongly militates against the finding of a religion. There are no formal worship services or even any

coordination to hold informal services. There are no specific ceremonial functions. While everyone that clicks "ordain me" on the website and provides the information is considered a minister, but with no recognized duties or ministry; thus, the existence of clergy is misleading. Plaintiff has no structure and organization beyond some commercial functions. Mr. Flummerfelt does not analyze if there are any efforts made at propagation (missionary work) and the evidence suggests Plaintiff does not engage in any proselyting at all. Plaintiff does not teach observance of religious holidays either.

The Court therefore precludes Plaintiff from offering the *ipse dixit* legal opinion that Plaintiff must be recognized as a religion. Plaintiff has rested upon legal conclusions drawn from a lawyer that fails to heed any of the controlling legal standards. By any metric, this proposed expert testimony falls short of the <u>Daubert</u> requirements of relevance and reliability. The Court should strike this expert opinion from the record and preclude Plaintiff from using this incorrect legal opinion to oppose summary judgment, in pursuit of summary judgment or at trial.

### 2.    The Legal Opinion that Plaintiff's Ministers Hold a Religious Right to Perform Marriages is Unworthy of Credence under Rule 702.

Plaintiff's use of an expert to opine that its ministers possess a First Amendment right to perform and solemnize marriages in Clark County is inadmissible for all the same reasons that the first opinion is inadmissible. Plaintiff's expert once again undertakes a legal analysis and makes unwarranted legal conclusions that are inconsistent with Ninth Circuit controlling law.

It is inherent in a free exercise claim that one is contending that one has a sincere religious belief and that the challenged conduct violates it. <u>See</u> <u>Shakur v. Schriro</u>, 514 F.3d 878, 884-85 (9th Cir. 2008); <u>Sourbeer v. Robinson</u>, 791 F.2d 1094, 1102 (3d Cir.1986). A plaintiff must allege that he or she has a sincere religious belief, and that "the law at issue in some way impacts the plaintiff's ability to either hold that belief or act pursuant to that belief." <u>GeorgiaCarry.Org, Inc. v. Georgia</u>, 687 F.3d 1244, 1256–57 (11th Cir. 2012). The plaintiff need not "objectively show that a central tenet of his faith is burdened," because it is the "sincerity of his belief rather than its centrality to his faith that is relevant to the free exercise inquiry." <u>Shakur</u>, 514 F.3d at 884.

Law Offices of
OLSON CANNON GORMLEY & STOBERSKI
A Professional Corporation
9950 West Cheyenne Avenue
Las Vegas, Nevada 89129
(702) 384-4012   Telecopier (702) 383-0701

Law Offices of
OLSON CANNON GORMLEY & STOBERSKI
A Professional Corporation
9950 West Cheyenne Avenue
Las Vegas, Nevada 89129
(702) 384-4012   Telecopier (702) 383-0701

The seminal Supreme Court opinion regarding beliefs and practices by the Free Exercise Clause is <u>Wisconsin v. Yoder</u>, 406 U.S. 205, 92 S.Ct. 1526 (1972). In <u>Yoder</u>, the court held that Wisconsin's compulsory education system infringed on the Free Exercise rights of Amish parents who, for religious reasons, removed their children from public schools before they reached age 16. Id. The court made a clear distinction between the Amish religious faith and the Amish way of life. Id. The Free Exercise Clause would protect the parents' decision only if they based it on religious belief:

> A way of life, however virtuous and admirable, may not be interposed as a barrier to reasonable state regulation of education if it is based on purely secular considerations; to have the protection of the Religious Clauses, the claims must be rooted in religious belief ... thus, if the Amish asserted their claims because of their subjective evaluation and rejection of the contemporary secular values accepted by the majority, much as Thoreau rejected the social values of his time and isolated himself at Walden Pond, their claims would not rest on a religious basis. Thoreau's choice was philosophical and personal rather than religious, and such belief does not rise to the demands of the Religion Clauses.

<u>Id.</u> at 215-16.

Accordingly, to establish that its First Amendment right to free exercise of religion has been violated, Plaintiff must establish the religious practice at issue satisfies two criteria: (1) the "proffered belief must be sincerely held" and (2) the "claim must be rooted in religious belief, not in 'purely secular' philosophical concerns." <u>Malik v. Brown</u>, 16 F.3d 330, 333 (9th Cir. 1994)(internal citations omitted); <u>see also</u> <u>Callahan v. Woods</u>, 658 F.2d 679, 683 (9th Cir.1981); <u>Johnson v. Moore</u>, 948 F.2d 517, 520 (9th Cir. 1991). The individual's belief system thus needs to be "sincere" and "meaningful" and must further "occupy a place in the life of its possessor parallel to that filled by the orthodox belief in God." <u>United States v. Seeger</u>, 380 U.S. 163, 187-88 (1969); <u>Welsh v. United States</u>, 398 U.S. 333, 343-44 (1970). "[P]hilosophical and personal rather than religious" beliefs are not enough. <u>Yoder</u>, 406 U.S. at 216. The Supreme Court has, however, explicitly rejected the notion that to claim the protection of the religion clauses, one must be responding to the commands of a particular religious organization. <u>Frazee v. Ill. Dep't. of Employment Sec.</u>, 489 U.S. 829, 834, 109 S.Ct. 1514, 1516–17 (1989).

Additionally, a person asserting a free exercise claim must show that the government action in question substantially burdens the person's practice of her religion. <u>Hernandez v. C.I.R.</u>, 490 U.S. 680, 699, 109 S.Ct. 2136 (1989); <u>Jones v. Williams</u>, 791 F.3d 1023, 1031 (9th Cir.

2015). "A substantial burden ... place[s] more than an inconvenience on religious exercise; it must have a tendency to coerce individuals into acting contrary to their religious beliefs or exert substantial pressure on an adherent to modify his behavior and to violate his beliefs." <u>Jones</u>, 791 F.3d at 1031-32. (quoting <u>Guru Nanak Sikh Soc'y of Yuba City v. Cnty. of Sutter</u>, 456 F.3d 978, 988 (9th Cir. 2006) (internal quotation marks and alterations omitted)).

Accordingly, the legal issue about whether a person has a free exercise right to hold secular authority to solemnize a marriage is not based upon any tenet of a particular religion or comparable to other religions. The issue pertains solely to the subjective intent of a particular person and whether the one sincerely holds that belief or practice as part of their religion. Plaintiff's expert offers no opinion that might assist the jury in determining an individual's adherent to a sincerely held religious belief and whether he or she has experienced a substantial religious burden. The methodology and the legal conclusion are both at odds with what will be the jury instructions. The legal opinion about the ultimate constitutional question pertaining to the Free Exercise Clause is also not relevant or reliable; therefore, the Court should also strike this expert and preclude its use in motion practice, any hearing and at trial.

## IV.   <u>CONCLUSION</u>

In accordance with the foregoing, the Clark County Defendants urge this Court to grant their motion to strike the expert report of Robert J. Flummerfelt, Esq. and enter an order precluding the expert from giving testimony in this case.

RESPECTFULLY SUBMITTED this *23* day of June, 2020.

OLSON CANNON GORMLEY
& STOBERSKI

By Thomas D. Dillard, Jr.
THOMAS D. DILLARD, JR., ESQ. (#006270)
STEPHANIE A. BARKER, ESQ. (#003176)
9950 West Cheyenne Avenue
Las Vegas, Nevada 89129
Attorney for Clark County Defendants

Law Offices of
OLSON CANNON GORMLEY & STOBERSKI
A Professional Corporation
9950 West Cheyenne Avenue
Las Vegas, Nevada 89129
(702) 384-4012     Telecopier (702) 383-0701

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the $2\,Y$ day of June, 2020, I served the above **MOTION TO STRIKE EXPERT REPORT** through the CM/ECF system of the United States District Court for the District of Nevada (or, if necessary, by U.S. Mail, first class, postage pre-paid), upon the following:

Ronald D. Green, Esq.
RANDAZZA LEGAL GROUP, PLLC
2764 Lake Sahara Drive, Ste. 109
Las Vegas, Nevada 89117
P: 702-420-2001
ecf@randazza.com
Attorneys for Plaintiff

/s/ Melissa Burgener
An Employee of Olson Cannon Gormley
& Stoberski

Law Offices of
OLSON CANNON GORMLEY & STOBERSKI
A Professional Corporation
9950 West Cheyenne Avenue
Las Vegas, Nevada 89129
(702) 384-4012    Telecopier (702) 383-0701