UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| UNIVERSAL LIFE CHURCH MONASTERY,<br><br>　　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>CLARK COUNTY NEVADA et al.,<br><br>　　　　　　　　　　　　Defendants. | Case No. 2:18-cv-02099-RFB-BNW<br><br>**ORDER** |

**I.   INTRODUCTION**

Before the Court is Defendant's Motion for Summary Judgment and Plaintiff's Motion for Summary Judgment. ECF Nos. 40, 41.

**II.   PROCEDURAL BACKGROUND**

Plaintiff commenced this action by filing a complaint on November 1, 2018. ECF No. 1. On November 26, 2018, Defendants filed an answer. ECF No. 8. On April 27, 2020, Defendants filed a motion for summary judgment, which was fully briefed. ECF Nos. 40, 42, 44. On April 29, 2020, Plaintiff filed a motion for summary judgment, which was fully briefed. ECF Nos. 41, 43, 45. On March 12, 2021, the Court held a hearing regarding parties' motions. ECF No. 64. This written order now follows.

**III.   FACTUAL FINDINGS**

The Court makes the following findings of undisputed and disputed facts.

### a. Undisputed Facts

During the years of 2016-2017, the Nevada Revised Statute ("NRS") § 122.062 applied to all marriages performed in Clark County. Pursuant to NRS Chapter 122, only a church or a religious organization incorporated, organized or established in the state of Nevada can be placed on a list of religious organizations approved to issue Affidavits of Authority to Solemnize Marriages ("AASM").

Universal Life Church Monastery Storehouse ("ULC") is a religious organization, and it ordains ministers over the internet for free. It is also registered with the Nevada Secretary of State as a foreign corporation doing business in the State of Nevada.

On May 20, 2016, Defendant Goya sent a letter to every organization for which the County Clerk had contact information.[1] The letter advised religious organizations to supply specific information in the next forty-five (45) days to establish that an agent acting as a marriage officiant must be of a religious organization "incorporated, organized or established in the State." The letter also indicated that if an organization wanted to be placed on an approved AASM list, it needed to submit the following:

1. Copy of the Articles of Incorporation and the most recent annual List of Officers and Directors as filed with the Nevada Secretary of State; - **or -**
2. Provide any two of the following:
   i. Notarized statement from a member confirming where and when services are held;
   ii. Copy of a rental agreement or mortgage statement with the name of the organization and the location where active services are held;
   iii. Copy of a recent public notice advertising the organization and the service dates and times, such as a newspaper article, flyer or online webpage;

---

[1] On April 13, 2016, Defendant Goya sent an email to her colleagues identifying organizations, including ULC, that appeared to be "fishy" and not comply with the law.

      iv. Copy of the letter from the Nevada Department of Taxation granting tax exempt status to the organization as a religious organization; or

      v. Copy of the letter from the Internal Revenue Service (IRS) granting organizational status as a 501(c)(3) religious organization.

On June 21, 2017, ULC provided its Articles of Incorporation with Washington State and registration documents filed with the Nevada Secretary of State, including registration as a "foreign" entity under Chapter 80 of the Nevada Revised Statutes and a list of its officers and directors. Clerk Goya responded on August 16, 2017, indicating the office still had not received sufficient proof that ULC is a religious organization with a presence in Nevada. She identified a list of documents identical to the May 2016 letter that ULC should submit for review and consideration. According to Defendant Goya, for a church to be "organized in Nevada under the law of the state" it meant that "they did go through proper licensing and filing with the Secretary of State." Defendant Goya testified that being established in the state included actively pursuing the religion within the state which included having active meetings or ministry in the state; therefore, without active meetings, a church or religious organization does not qualify as AASM. Ultimately, Plaintiff was not placed on the Clerk's list of organizations approved to issue an AASM.[2]

---

[2] Following the passage of enabling legislation, beginning in January of 2018, Clark County changed the requirements for marriage officiants to remove the aforementioned requirements. A person need only complete an on-line class to receive a certificate allowing performance of five or less marriages a year. If a person wanted to perform more than five marriages, then he or she had to attend in person a class offered monthly in Clark County to obtain an authorizing certificate. There was no requirement that a person belong to a religious organization and all persons must obtain the certificate regardless of prior experience, religious or otherwise. Plaintiff does not allege the new marriage officiant procedure that went into effect in 2018 is unconstitutional.

### b. Disputed Facts

The parties dispute whether Plaintiff ULC provided the requested documents to obtain AASM approval.

### IV. LEGAL STANDARD

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322(1986). When considering the propriety of summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. Gonzalez v. City of Anaheim, 747 F.3d 789, 793 (9th Cir. 2014). If the movant has carried its burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts ….Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (alteration in original) (internal quotation marks omitted). It is improper for the Court to resolve genuine factual disputes or make credibility determinations at the summary judgment stage. Zetwick v. Cty. of Yolo, 850 F.3d 436, 441 (9th Cir. 2017) (citations omitted).

### V. DISCUSSION

### a. First Amendment Free Exercise of Religion

The Court finds that Plaintiff ULC has no standing to bring a First Amendment free exercise to solemnize civil marriage claim. The Free Exercise Clause of the First Amendment provides that "Congress shall make no law respecting an establishment of religion or prohibiting the free exercise thereof." Am. Family Ass'n, Inc. v. City & Cty. of San Francisco, 277 F.3d 1114, 1123 (9th Cir. 2002) (citing U.S. Const. amend. I). A regulation or law violates the Free Exercise clause when it is neither neutral nor generally applicable, substantially burdens a religious practice, and is not justified by a substantial state interest or narrowly tailored to achieve that interest. Id. (citing Church of Lukumi Babalu Aye, Inc. v. Hialeah, 508 U.S. 520, 531 – 32 (1993)). The Ninth

Circuit has found that an entity, organization, or person has no First Amendment free exercise right to perform civil marriages. See Jones v. Bradley, 590 F.2d 292, 296 (9th Cir. 1979) ((finding "no support for th[e] proposition that "a pastor of the ULC" has "a First Amendment free exercise right to perform marriages"). The Court thus finds that Plaintiff ULC does not have standing to bring a First Amendment Free Exercise claim. Therefore, there is no genuine dispute of material fact and the Court grants summary judgment to Defendants.

### b. Nevada Const., Art. 1, § 4 Free Exercise of Religion

The Court finds that Plaintiff has no standing under Nevada state law. Similar to the First Amendment of the United States Constitution, Article 1, Section 4 of the Constitution of the State of Nevada provides that "[t]he free exercise and enjoyment of religious profession and worship without discrimination or preference shall forever be allowed in this State." Nev. Const., Art. 1, § 4. The Court finds that based upon the plain text of this Article of the Nevada Constitution, Plaintiff has no standing to bring a claim under Nevada law. As the Nevada Supreme Court has very recently reaffirmed, the plain text of a provision or article of the Nevada Constitution controls its interpretation and application. Legislature of Nev. v. Settelmeyer, 486 P.3d 1276, 1280 (Nev. 2021) (explaining that when interpreting the Nevada Constitution, courts must "look to the provision's language; if it is plain, the text controls."). The plain language of the Article is directed to the "religious profession and worship" and makes no mention of the civil law process of solemnizing marriages. Because this language does not explicitly or implicitly create a claim, there is no standing for a religious organization to bring a free exercise claim for not being included in a civil legal process.

Courts in this district have similarly found that this article of the Nevada Constitution is considered coextensive with the federal First Amendment's Free Exercise Clause. See e.g., Johnson v. Nev. Ex rel. Bd. of Prison Comm'rs, Case No. 3:11-cv-00487, 2013 U.S. Dist. LEXIS 139426, at *10 (D. Nev. Sept. 26, 2013.), Martinez v. Clark Cnty., Nev., 846 F. Supp. 2d 1131, 1145 (D.Nev. 2012).

For all of the above reasons, the Court finds that ULC has no standing under the Nevada Constitution and the Court grants summary judgment to Defendants.

### c. Fourteenth Amendment Due Process

- 5 -

Plaintiff asserts that Defendants' denial of its application for an AASM violated its Fourteenth Amendment procedural and substantive due process rights. This Court disagrees. The Due Process Clause "confers both substantive and procedural rights." Albright v. Oliver, 510 U.S. 266, 272 (1994). Substantive due process "prohibits States from infringing fundamental liberty interests, unless the infringement is narrowly tailored to serve a compelling state interest." Lawrence v. Texas, 539 U.S. 558, 593 (2003). Procedural due process "'minimize[s] substantively unfair or mistaken deprivations of' life, liberty, or property" by guaranteeing all persons fair procedures by which they may "contest the basis upon which a State proposes to deprive them of protected interests." Carey v. Piphus, 435 U.S. 247, 259–60 (1978). In order to state a Fourteenth Amendment due process claim, a plaintiff must adequately allege that there exists a deprivation of a specific liberty interest without the constitutionally required procedures. See Swarthout v. Cooke, 562 U.S. 216, 219 (2011). Such interests may arise from the Constitution itself or from state law. When there is such a liberty interest or property interest, the only other issue is whether the plaintiff was deprived of that interest without the constitutionally required procedures. Id. at 861-63.

Here, Plaintiff fails to identify authority showing that the right to solemnize and perform marriages is a protected interest. The procedural component of the Due Process Clause does not protect everything that might be described as a "benefit"; plaintiff must "have a legitimate claim of entitlement to it." Town of Castle Rock, Colo v. Gonzales, 545 U.S.748, 756 (2005). Such entitlements are, "of course, ... not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." Paul v. Davis, 424 U.S. 693, 709 (1976) (internal citations omitted). "[A] benefit is not a protected entitlement if government officials may grant or deny it in their discretion." Town of Castle Rock, 545 U.S. at 756; Foss v. National Marine Fisheries Service, 161 F.3d 584, 588 (9th Cir. 1998) (noting the "Ninth Circuit has long held that applicants have a property interest protectible under the Due Process Clause where regulations establishing entitlement to the benefit are…mandatory in nature."). Nevada law does not mandate that the County Clerk issue AASM approval to all churches or religious organizations. Instead, the approval process to obtain an AASM was and is discretionary. Therefore, the Court finds that ULC has no protected interest in solemnizing marriages. As ULC has no identified protected interest, the Court finds that there is

no genuine issue of material fact as to whether Defendants violated ULC's Fourteenth Amendment due process rights and grants summary judgment to Defendants.[3]

### d. Fourteenth Amendment Equal Protection

The Court finds that there are genuine issues of disputed material fact as to whether Defendants violated Plaintiff's Fourteenth Amendment Equal Protection rights. Under the Equal Protection Clause, all persons similarly situated should be treated alike." Alpha Delta Chi-Delta Chapter v. Reed, 648 F.3d 790, 804 (9th Cir. 2011) (citing City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985)). A government action can be challenged as either a facial or as-applied violation of Equal Protection. De La Cruz v. Tormey, 582 F.2d 45, 49-51 (9th Cir. 1978). A facial Equal Protection violation "occurs when the Government explicitly classifies or distinguishes among persons by reference to criteria such as ... religion which have been deemed improper bases for differentiation" whereas an as-applied Equal Protection violation "focuses [ ] not on the form of the governmental action, ... but rather upon its results." Id. at 49-50. In either case, plaintiffs must show that defendants acted with a discriminatory purpose and that they are members of a protected class. A discriminatory purpose cannot be shown simply through disproportionate impact. See Vill. of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 265 (1977). Plaintiffs must produce proof of discriminatory intent or purpose to show an Equal Protection violation. Id. To demonstrate that Plaintiffs are members of a protected class, Plaintiffs must be members of a "discrete and insular class in need of extraordinary protection from majoritarian political process." Mass. Bd. of Ret. v. Murgia, 427 U.S. 307, 313 (1976) (internal citations omitted).

Here, Plaintiff ULC brings an as-applied equal protection challenge to Defendants' AASM licensing scheme. ULC argues that as a religious organization, it is a member of a protected class,

---

[3] Plaintiff's state substantive and procedural due process claim is identical to Plaintiff's federal claims. Because Nevada Supreme Court has applied the same standards when considering the scope of due process under both the U.S. Constitution and the Nevada Constitution, the Court also grants summary judgment to Defendants with respect to Plaintiff's state due process claim. See, e.g., Rodriquez v. Eighth Jud. Dis. Ct.,102 P.2d 41, 48-51 (Nev. 2004) (procedural due process analysis same for federal and state constitution).

and that Defendants' licensing scheme discriminated against ULC as a non-traditional church. The record reflects that ULC submitted documents to be on the AASM approval list.  However, Defendant Goya testified that there were additional requirements not listed in its letters, such as the religious organization providing proof of active meetings. Additionally, ULC presented evidence that another similarly situated non-traditional church licensed to do business in Nevada, American Marriage Ministries, was able to satisfy requirements solely because its listing on the Nevada Secretary of State website contained a checkbox showing it was registered as a religious organization. Therefore, Plaintiff asserts that Defendants implemented its approval process in a discriminatory manner. The Court finds that whether ULC provided the requested documents to be approved to solemnize marriage in Clark County is a genuine dispute of material fact. The Court therefore denies summary judgment as to both parties.

    e. **Nevada State Law Equal Protection**

  Because the Nevada Supreme Court has applied the same standard when considering equal protection under both the U.S. Constitution and  the Nevada Constitution, this Court also denies summary judgment as to both parties. See Barrett v. Baird, 908 P.2d 689, 698 (1995) ("The standard for testing the validity of legislation under the equal protection clause of the state constitution is the same as the federal standard."), overruled on other grounds by Lioce v. Cohen, 174 P.3d 970 (2008); City of Reno v. Washoe County, 94 Nev. 327, 330, 580 P.2d 460, 462 (1978) ("Although this court's ruling . . . was focused on the fourteenth amendment to the Federal Constitution, we hold that the same reasoning applies to the due process clause of the Nevada Constitution, article 1, section 8.")

**VI. CONCLUSION**

 **IT IS THEREFORE ORDERED** that Defendants' Motion for Summary Judgment (ECF No. 40) is GRANTED in part. The Court grants summary judgment to Defendants regarding

Plaintiff's First Amendment claim, Fourteenth Amendment Due Process claim, and Nevada Const., Art. 1, § 4 Free Exercise claim.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment (ECF No. 41) is DENIED. The parties shall file a joint pretrial order by October 1, 2021, with proposed trial dates beginning January 2022.

DATED September 19, 2021.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**